FILED

1   ANDRÉ BIROTTE JR.
    United States Attorney
2   ROBERT E. DUGDALE
    Assistant United States Attorney
3   Chief, Criminal Division
    JAMES A. BOWMAN (Cal. Bar No. 220227)
4   Assistant United States Attorney
    Major Frauds Section
5        1100 United States Courthouse
         312 North Spring Street
6        Los Angeles, California 90012
         Telephone: (213) 894-2213
7        Facsimile: (213) 894-6269
         E-mail: james.bowman@usdoj.gov
8
    Attorneys for Plaintiff
9   UNITED STATES OF AMERICA

2013 MAY -6 PM 12: 32

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

10                  UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          No. CR   CR13-0314

13                  Plaintiff,         PLEA AGREEMENT FOR DEFENDANT
                                       BRYAN SHAW
14                  v.

15  BRYAN SHAW,

16                  Defendant.

17

18       1.   This constitutes the plea agreement between BRYAN SHAW

19  ("defendant") and the United States Attorney's Office for the

20  Central District of California (the "USAO") in the investigation of

21  defendant's insider trading scheme.  This agreement is limited to

22  the USAO and cannot bind any other federal, state, local, or foreign

23  prosecuting, enforcement, administrative, or regulatory authorities.

24                    DEFENDANT'S OBLIGATIONS

25       2.   Defendant agrees to:

26       a)   Give up the right to indictment by a grand jury and,

27  at the earliest opportunity requested by the USAO and provided by

28  the Court, appear and plead guilty to a one-count information in the

                               1

form attached to this agreement or a substantially similar form, which charges defendant with conspiracy to commit securities fraud through insider trading, in violation of 18 U.S.C. § 371 (the "Information").

        b)   Not contest facts agreed to in this agreement.

        c)   Abide by all agreements regarding sentencing contained in this agreement.

        d)   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

        e)   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

        f)   Be truthful at all times with Pretrial Services, the United States Probation Office, and the Court.

        g)   Pay disgorgement of at least $1,271,787 (an amount that is intended to be equal to the amount of defendant's proceeds from the insider trading conspiracy charged in the information) at or before the time of sentencing.

        h)   Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay and prior to sentencing submits a completed financial statement on a form to be provided by the USAO.

    3.   Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting,

enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

      a)   Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

      b)   Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

      c)   Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

   4.   For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated February 5, 2013 ("Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

THE USAO'S OBLIGATIONS

   5.   The USAO agrees to:

      a)   Not contest facts agreed to in this agreement.

      b)   Abide by all agreements regarding sentencing contained in this agreement.

      c)   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level

1    reduction in the applicable Sentencing Guidelines offense level,

2    pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move

3    for an additional one-level reduction if available under that

4    section.

5         6.   The USAO further agrees:

6              a)   Not to offer as evidence in its case-in-chief in the

7    above-captioned case or any other criminal prosecution that may be

8    brought against defendant by the USAO, or in connection with any

9    sentencing proceeding in any criminal case that may be brought

10   against defendant by the USAO, any Cooperation Information.

11   Defendant agrees, however, that the USAO may use both Cooperation

12   Information and Plea Information: (1) to obtain and pursue leads to

13   other evidence, which evidence may be used for any purpose,

14   including any criminal prosecution of defendant; (2) to cross-

15   examine defendant should defendant testify, or to rebut any evidence

16   offered, or argument or representation made, by defendant,

17   defendant's counsel, or a witness called by defendant in any trial,

18   sentencing hearing, or other court proceeding; and (3) in any

19   criminal prosecution of defendant for false statement, obstruction

20   of justice, or perjury.

21             b)   Not to use Cooperation Information against defendant

22   at sentencing for the purpose of determining the applicable

23   guideline range, including the appropriateness of an upward

24   departure, or the sentence to be imposed, and to recommend to the

25   Court that Cooperation Information not be used in determining the

26   applicable guideline range or the sentence to be imposed.  Defendant

27   understands, however, that Cooperation Information will be disclosed

28   to the probation office and the Court, and that the Court may use

4

Cooperation Information for the purposes set forth in U.S.S.G. § 1B1.8(b) and for determining the sentence to be imposed.

c)   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

d)   If the USAO determines, in its exclusive judgment, that defendant has both complied with defendant's obligations under paragraphs 2 and 3 above and provided substantial assistance to law enforcement in the prosecution or investigation of another ("substantial assistance"), to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines, and to recommend a term of imprisonment within this reduced range.

DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

7.   Defendant understands the following:

a)   Any knowingly false or misleading statement by defendant will subject defendant to prosecution for false statement, obstruction of justice, and perjury and will constitute a breach by defendant of this agreement.

b)   Nothing in this agreement requires the USAO or any other prosecuting, enforcement, administrative, or regulatory authority to accept any cooperation or assistance that defendant may offer, or to use it in any particular way.

c)   Defendant cannot withdraw defendant's guilty plea if the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a reduced guideline range or if the USAO makes such a motion and the Court does not grant it or if the Court grants such a USAO motion but elects to sentence above the reduced range.

1    d)    At this time the USAO makes no agreement or

2 representation as to whether any cooperation that defendant has

3 provided or intends to provide constitutes or will constitute

4 substantial assistance.   The decision whether defendant has provided

5 substantial assistance will rest solely within the exclusive

6 judgment of the USAO.

7    e)    The USAO's determination whether defendant has

8 provided substantial assistance will not depend in any way on

9 whether the government prevails at any trial or court hearing in

10 which defendant testifies or in which the government otherwise

11 presents information resulting from defendant's cooperation.

12                    <u>NATURE OF THE OFFENSE</u>

13    8.    Defendant understands that for defendant to be guilty of

14 the crime charged in count one of the information, that is,

15 conspiracy to commit securities fraud through insider trading, in

16 violation of Title 18, United States Code, Section 371, the

17 following must be true:

18    a)    Beginning no later than in or about October 2010, and

19 continuing through at least in or about May 2012, there was an

20 agreement between two or more persons to commit the crime of

21 securities fraud through insider trading, in violation of Title 15,

22 United States Code, Sections 78j(b), and 78ff, and Title 17, Code of

23 Federal Regulations, Section 240.10b-5;

24    b)    The defendant became a member of the conspiracy

25 knowing of at least one of its objects and intending to help

26 accomplish it; and

27    c)    One of the members of the conspiracy performed at

28 least one overt act for the purpose of carrying out the conspiracy.

9.    Defendant further understands that the elements of securities fraud through insider trading, in violation of Title 15, United States Code, Sections 78j(b), and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, are as follows:

a)    Beginning no later than in or about October 2010, and continuing through at least May 2012, defendant engaged in an insider trading scheme in connection with the purchase or sale of the stock of certain publicly-traded companies, meaning that:

i.    Another individual in the scheme possessed material non-public information regarding a publicly-traded company;

ii.   That individual disclosed this material, non-public information to defendant in anticipation that it would be wrongfully used in connection with the purchase or sale of securities;

iii.  Defendant used the material, non-public information provided by the individual in deciding whether to purchase or sell the stock of a publicly-traded company; and

iv.   In return, the individual who passed the material, non-public information anticipated some kind of benefit, directly or indirectly.

b)    When defendant engaged in the insider trading scheme, defendant acted willfully, knowingly, and with the intent to defraud the publicly-traded companies and their shareholders;

c)    In furtherance of that scheme, there occurred at least one use of any means or instruments of transportation or communication in interstate commerce or the use of the mails or any facility of any national securities exchange.

///

7

## PENALTIES AND RESTITUTION

10.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 371, is: five years imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.  Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12.  Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition.  Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that

1    unanticipated collateral consequences will not serve as grounds to

2    withdraw defendant's guilty plea.

3        13.  Defendant understands that, if defendant is not a United

4    States citizen, the felony conviction in this case may subject

5    defendant to: removal, also known as deportation, which may, under

6    some circumstances, be mandatory; denial of citizenship; and denial

7    of admission to the United States in the future.  The court cannot,

8    and defendant's attorney also may not be able to, advise defendant

9    fully regarding the immigration consequences of the felony

10   conviction in this case.  Defendant understands that unexpected

11   immigration consequences will not serve as grounds to withdraw

12   defendant's guilty plea.

13                           FACTUAL BASIS

14       14.  Defendant admits that defendant is, in fact, guilty of the

15   offense to which defendant is agreeing to plead guilty.  Defendant

16   and the USAO agree to the Factual Statement attached as Exhibit A to

17   this agreement.  Defendant and the USAO agree that this statement of

18   facts is sufficient to support a plea of guilty to the charge

19   described in this agreement and to establish the Sentencing

20   Guidelines factors set forth in paragraph 16 below but is not meant

21   to be a complete recitation of all facts relevant to the underlying

22   criminal conduct or all facts known to either party that relate to

23   that conduct.

24                         SENTENCING FACTORS

25       15.  Defendant understands that in determining defendant's

26   sentence the Court is required to calculate the applicable

27   Sentencing Guidelines range and to consider that range, possible

28   departures under the Sentencing Guidelines, and the other sentencing

                                    9

factors set forth in 18 U.S.C. § 3553(a).  Defendant understands
that the Sentencing Guidelines are advisory only, that defendant
cannot have any expectation of receiving a sentence within the
calculated Sentencing Guidelines range, and that after considering
the Sentencing Guidelines and the other § 3553(a) factors, the Court
will be free to exercise its discretion to impose any sentence it
finds appropriate up to the maximum set by statute for the crimes of
conviction.

16.  Defendant and the USAO agree to the following applicable
Sentencing Guidelines factors:

| | | | |
|---|---|---|---|
| Base Offense Level | : | 8 | [U.S.S.G. § 2B1.4] |
| Gain from Offense Between $1 million and $2.5 million | : | +16 | [U.S.S.G. § 2B1.1(b)(1)(I)] |

The USAO will agree to a two-level downward adjustment for
acceptance of responsibility (and, if applicable, move for an
additional one-level downward adjustment under U.S.S.G. § 3E1.1(b))
only if the conditions set forth in paragraph 2 are met.  Defendant
and the USAO reserve the right to argue that additional specific
offense characteristics, adjustments, and departures under the
Sentencing Guidelines are appropriate.

17.  Defendant understands that there is no agreement as to
defendant's criminal history or criminal history category.

18.  Defendant and the USAO reserve the right to argue for a
sentence outside the sentencing range established by the Sentencing
Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
(a)(2), (a)(3), (a)(6), and (a)(7).

1

## WAIVER OF CONSTITUTIONAL RIGHTS

2      19.  Defendant understands that by pleading guilty, defendant

3  gives up the following rights:

4           a)   The right to persist in a plea of not guilty.

5           b)   The right to a speedy and public trial by jury.

6           c)   The right to be represented by counsel – and if

7  necessary have the court appoint counsel – at trial.  Defendant

8  understands, however, that, defendant retains the right to be

9  represented by counsel – and if necessary have the court appoint

10 counsel – at every other stage of the proceeding.

11          d)   The right to be presumed innocent and to have the

12 burden of proof placed on the government to prove defendant guilty

13 beyond a reasonable doubt.

14          e)   The right to confront and cross-examine witnesses

15 against defendant.

16          f)   The right to testify and to present evidence in

17 opposition to the charges, including the right to compel the

18 attendance of witnesses to testify.

19          g)   The right not to be compelled to testify, and, if

20 defendant chose not to testify or present evidence, to have that

21 choice not be used against defendant.

22          h)   Any and all rights to pursue any affirmative

23 defenses, Fourth Amendment or Fifth Amendment claims, and other

24 pretrial motions that have been filed or could be filed.

25                 WAIVER OF APPEAL OF CONVICTION

26      20.  Defendant understands that, with the exception of an

27 appeal based on a claim that defendant's guilty plea were

28 involuntary, by pleading guilty defendant is waiving and giving up

any right to appeal defendant's conviction on the offense to which
defendant is pleading guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK

21.  Defendant agrees that, provided the Court imposes a term
of imprisonment within or below the range corresponding to an
offense level of 21 and the criminal history category calculated by
the Court, defendant gives up the right to appeal all of the
following: (a) the procedures and calculations used to determine and
impose any portion of the sentence; (b) the term of imprisonment
imposed by the Court; (c) the fine imposed by the court, provided it
is within the statutory maximum; (d) the term of probation or
supervised release imposed by the Court, provided it is within the
statutory maximum; and (e) any of the following conditions of
probation or supervised release imposed by the Court: the conditions
set forth in General Orders 318, 01-05, and/or 05-02 of this Court;
the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and
3583(d); and the alcohol and drug use conditions authorized by 18
U.S.C. § 3563(b)(7).

22.  Defendant also gives up any right to bring a post-
conviction collateral attack on the conviction or sentence,
including any order of restitution, except a post-conviction
collateral attack based on a claim of ineffective assistance of
counsel, a claim of newly discovered evidence, or an explicitly
retroactive change in the applicable Sentencing Guidelines,
sentencing statutes, or statutes of conviction.

23.  The USAO agrees that, provided (a) all portions of the
sentence are at or below the statutory maximum specified above and
(b) the Court imposes a term of imprisonment within or above the

12

range corresponding to an offense level of 21 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

24. Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

25. Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

26. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

BREACH OF AGREEMENT

27.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea, and (b) the USAO will be relieved of all its obligations under this agreement.

28.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

    a)  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b)  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c)   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND PROBATION OFFICE NOT PARTIES

29.   Defendant understands that the Court and the United States Probation Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 16 are consistent with the facts of this case.   While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may

15

be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

32.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.


AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF CALIFORNIA


ANDRÉ BIROTTE JR.
United States Attorney

_____          5/2/2013
JAMES A. BOWMAN                           Date
Assistant United States Attorney

_____          4-30-2013
BRYAN SHAW                                Date
Defendant

_____          5-1-2013
NATHAN HOCHMAN                            Date
Attorney for Defendant
BRYAN SHAW

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_Bryan Shaw_        4-30-2013
BRYAN SHAW       Date
Defendant

18

1    <u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2         I am BRYAN SHAW's attorney.   I have carefully and thoroughly

3    discussed every part of this agreement with my client.   Further, I

4    have fully advised my client of his rights, of possible pretrial

5    motions that might be filed, of possible defenses that might be

6    asserted either prior to or at trial, of the sentencing factors set

7    forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8    provisions, and of the consequences of entering into this agreement.

9    To my knowledge: no promises, inducements, or representations of any

10   kind have been made to my client other than those contained in this

11   agreement; no one has threatened or forced my client in any way to

12   enter into this agreement; my client's decision to enter into this

13   agreement is an informed and voluntary one; and the factual basis

14   set forth in this agreement is sufficient to support my client's

15   entry of a guilty plea pursuant to this agreement.

16

17   _____          5-1-2013
                                                _____
18   NATHAN HOCHMAN                            Date
     Attorney for Defendant
19   BRYAN SHAW

20

21

22

23

24

25

26

27

28

                              19

**EXHIBIT A TO PLEA AGREEMENT – FACTUAL STATEMENT OF BRYAN SHAW**

**A.   Overview**

1.   Between approximately October 2010, and continuing until approximately May 2012, defendant BRYAN SHAW ("defendant") knowingly and willfully engaged a conspiracy with his Scott London ("London") to commit securities fraud through insider trading.   During the time period of the conspiracy, defendant was close friends with London, who was a senior partner at the accounting firm, KPMG, LLP.

2.   KPMG was an international accounting firm that, among other things, had an audit department that reviewed and verified the financial statements of publicly-traded corporate clients.   Because corporate clients disclosed financial information to KPMG in the course of such audits that had not yet been disclosed to the public, KPMG required that its employees maintain the confidentiality of information that they received through their employment at the firm. KPMG also required that its employees not make securities trades based on confidential information obtained from its clients, not use that information for their own personal benefit, or disclose that information to any third party.

3.   London was the partner in charge of the KPMG's audit practice for the Pacific Southwest region, including Southern California, Nevada, and Arizona.   London was also the partner with primary responsibility at KPMG for handling the audits of certain large corporate clients, including, among others, Herbalife, Ltd ("Herbalife") and Skechers USA, Inc. ("Skechers").   London also supervised accounting partners at KPMG who handled the audits for other large corporate clients, including, among others, Deckers Outdoor Corporation ("Deckers"), Pacific Capital Bancorp ("Pacific Capital"), and RSC Holdings, Inc. ("RSC Holdings").   Through his

1  position at KPMG, London regularly received confidential information

2  regarding the firm's corporate clients, including confidential

3  information regarding Herbalife, Skechers, Deckers, Pacific Capital,

4  and RSC Holdings.  Defendant knew that London was required by KPMG

5  not to disclose confidential information about the firm's clients.

**B.   The KPMG Clients**

6

7  4.   Herbalife was a global nutrition company, with

8  headquarters in Los Angeles, California, within the Central District

9  of California.  The common stock of Herbalife was registered with

10 the United States Securities and Exchange Commission ("SEC") under

11 Section 12(b) of the Securities Exchange Act of 1934 ("the '34

12 Act"), 15 U.S.C. § 781.  The common stock of Herbalife was listed on

13 the New York Stock Exchange under the ticker symbol "HLF."

14 5.   Skechers was a company that designed, manufactured, and

15 marketed footwear, with headquarters in Manhattan Beach, California,

16 within the Central District of California.  The common stock of

17 Skechers was registered with the SEC under the '34 Act, and was

18 listed on the New York Stock Exchange under the ticker symbol "SKX."

19 6.   Deckers was a company that designed, manufactured, and

20 marketed footwear and outdoor accessories, with headquarters in

21 Goleta, California, within the Central District of California.  The

22 common stock of Deckers was registered with the SEC under the '34

23 Act, and was listed on the Nasdaq National Market under the ticker

24 symbol "DECK."

25 7.   Pacific Capital was a bank holding company that operated

26 Santa Barbara Bank and Trust, N.A., with headquarters in Santa

27 Barbara, California, within the Central District of California.  The

28 common stock of Pacific Capital was registered with the SEC under
   the '34 Act, and was listed on the Nasdaq National Market under the

1  ticker symbol "PCBC."  On or about March 12, 2012, Pacific Capital
2  announced that it was being acquired by UnionBanCal Corporation and
3  its primary subsidiary Union Bank, N.A. (collectively referred to
4  herein as "Union Bank").

5      8.   RSC Holdings was a company that leased construction and
6  industrial equipment, with headquarters in Scottsdale, Arizona.  The
7  common stock of RSC Holdings was registered with the SEC under the
8  '34 Act, and was listed on the New York Stock Exchange under the
9  ticker symbol "RRR."  On or about December 16, 2011, RSC Holdings
10 announced that it was being acquired by United Rentals, Inc.
11 ("United Rentals").

**C.   The Insider Trading Conspiracy**

12     9.   Defendant's insider trading conspiracy with London
13 operated as follows:

14         a.   London would obtain material, non-public information
15 ("inside information") regarding certain publicly-traded KPMG
16 clients, including Herbalife, Skechers, and Deckers, including but
17 not limited to inside information regarding those companies'
18 earnings and financial outlook.  London would also obtain inside
19 information regarding the planned acquisitions of other KPMG
20 clients, including Pacific Capital and RSC Holdings.

21         b.   London would provide the inside information regarding
22 Herbalife, Skechers, Deckers, Pacific Capital, and RSC Holdings to
23 defendant, in violation of (1) the fiduciary and other duties of
24 trust and confidence that London owed to KPMG and its clients,
25 (2) the expectations of confidentiality of KPMG's clients, and
26 (3) KPMG's policies regarding the use and safekeeping of inside
27 information.  In providing this inside information to defendant,
28 London knew that defendant would make securities transactions based

1  on that inside information, thereby generating substantial illegal
2  profits.
3      c.   Defendant would use the inside information belonging
4  to KPMG and its clients, knowing that London had provided that
5  inside information in violation of a duty of trust and confidence,
6  to make securities transactions in Herbalife, Skechers, Deckers,
7  Pacific Capital, and RSC Holdings.  As a result of his securities
8  trades based on the inside information received from London,
9  defendant generated at least $1,270,000 in illegal profits.
10     d.   After generating these illegal profits, defendant
11  would secretly make cash payments of several thousand dollars to
12  London as compensation for providing the inside information
13  regarding KPMG's clients.  In all, defendant secretly paid London at
14  least $60,000 in cash for the inside information.  Defendant would
15  also give London other valuable items, including jewelry, concert
16  tickets, and a $12,000 Rolex Daytona Cosmograph, as compensation for
17  the inside information.

**D.   Selected Examples of Insider Trading by Defendant and London**

  (1)  Insider Trading Related to Herbalife's May 2, 2011
       Earnings Announcement

10.   In or about April 2011, London called defendant and
disclosed inside information to defendant regarding Herbalife's
earnings for the quarter ended March 31, 2011.  Defendant then began
to buy call options of Herbalife stock in his brokerage account at
Fidelity ("the Shaw Fidelity Account") based on the inside
information about Herbalife's earnings that he received from London.
After receiving this information, defendant continued to heavily
purchase shares of Herbalife stock in the Shaw Fidelity Account
based on the inside information about Herbalife's earnings that he
received from London.

23

11.   On May 2, 2011, Herbalife announced record earnings for the quarter ended March 31, 2011.  After that announcement, between approximately May 3, 2011, and May 24, 2011, defendant sold the shares of Herbalife and call options of Herbalife stock that he had bought earlier based on inside information he had received from London, generating illegal profits of at least $305,000.

(2)   Insider Trading Related to United Rentals' December 16, 2011 Acquisition of RSC Holdings

12.   On or about December 12, 2011, London called defendant and disclosed inside information to defendant regarding the fact that United Rentals may acquire RSC Holdings.  Later that day, defendant deposited approximately $30,000 of additional funds into the Shaw Fidelity Account.  On or about December 14, 2011, London called defendant and disclosed additional inside information regarding United Rentals' potential acquisition of RSC Holdings.  Later that day, defendant transferred an additional $130,000 into the Shaw Fidelity Account.  He also began to buy shares of RSC Holdings stock in the Shaw Fidelity Account based on the inside information that he had received from London regarding the potential acquisition of RSC Holdings.

13.   On December 16, 2011, RSC Holdings and United Rentals jointly announced that United Rentals was acquiring RSC Holdings. After that announcement, between approximately December 19, 2011, and December 21, 2011, defendant sold the shares of RSC Holdings that he had purchased earlier in December 2011 based on the inside information that he had received from London, generating illegal profits of at least $190,000.

///

///

24

      (3)   <u>Insider Trading Related to Union Bank's March 12, 2012</u>
<u>Acquisition of Pacific Capital</u>

14.  On or about February 3, 2012, London called defendant and disclosed inside information to defendant regarding the fact that Union Bank may acquire Pacific Capital. Later that day, defendant began to buy shares of Pacific Capital in the Shaw Fidelity Account based on the inside information that he had received from London regarding Union Bank's upcoming acquisition of Pacific Capital. Between February 3, 2012, and on or about March 11, 2012, defendant continued to buy shares of Pacific Capital and call options of Pacific Capital stock in the Shaw Fidelity Account based on the inside information that he had received from London regarding Union Bank's upcoming acquisition of Pacific Capital.

15.  On or about March 12, 2012, Union Bank had announced that it was acquiring Pacific Capital. After that announcement, between approximately March 12, 2012, and April 24, 2012, defendant sold the shares of Pacific Capital and call options of Pacific Capital stock that he had purchased earlier in February 2012 and March 2012 based on the inside information that he had received from London, generating illegal profits of at least $365,000.

      (4)   <u>Insider Trading Related to Deckers' April 26, 2012</u>
<u>Earnings Announcement</u>

16.  On or about April 18, 2012, London called defendant and disclosed inside information to defendant regarding Deckers' earnings for the quarter ended March 31, 2012. Later that day, defendant began to purchase put options of Deckers stock in the Shaw Fidelity Account based on the inside information about Deckers' earnings that he received from London. On or about April 25, 2012, London called defendant and disclosed additional inside information to defendant regarding Deckers' earnings for the quarter ended March

31, 2012.   Between April 18, 2012, and April 26, 2012, defendant purchased put options of Deckers stock in the Shaw Fidelity Account based on the inside information about Deckers' earnings that he received from London.

17.   On April 26, 2012, Deckers announced disappointing financial results for the quarter ended March 31, 2012.   After that announcement, between April 27, 2012, and May 1, 2012, defendant sold the put options of Deckers stock that he had purchased earlier in April 2012 based on the inside information that he had received from London, generating illegal profits of at least $161,000.